UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TOMMY SIMMON (AKA TOMMY SIMMONS)

                Plaintiff.                    **AMENDED COMPLAINT**
                                                  **AND DEMAND FOR**
      -against-                            **JURY TRIAL**

THE CITY OF NEW YORK, and                  **15CV03489**
CORRECTIONS OFFICERS JOHN DOE,
Individually and in their Official Capacities,

                Defendants.
------------------------------------------------------------x

      Plaintiff, TOMMY SIMMON (AKA TOMMY SIMMONS), by and through his attorneys, **Fisher & Byrialsen PLLC,** complaining of the defendants herein, respectfully shows the Court and alleges:

## PRELIMINARY STATEMENT

      1. This is a civil rights action in which the plaintiff, Quintin Rodriguez, seeks relief for defendants' violations, under color of state law, of his rights, privileges and immunities secured by the 42 U.S.C. *§* 1983; and the Fourth, Fifth, Fourteenth and Eighth Amendments to the United States Constitution.

      2. Defendants, the City of New York (hereinafter, "NYC"), New York City Department of Corrections Officers John Does; individually and, as the case may be, in their official capacities, jointly and severally, did cause plaintiff Tommy Simmon (aka Tommy Simmons) to be subject to, *inter alia*, excessive and unreasonable force, causing him physical and mental injury.

3. Plaintiff is not the only inmate at Rikers Island who has been subjected to brutality by New York City Corrections Officers. The pattern of brutality in the City's jails is deeply entrenched. In 1990, inmates first obtained injunctive relief in *Fisher v. Koehler*, 83-CV-2128 (S.D.N.Y.), in a class action addressing excessive use of force in the Correction Institution for Men ("CIFM"), a Rikers Island jail now known as the Eric M. Taylor Center ("EMTC"). Although that injunction remains in effect, its terms are apparently limited to EMTC. In the subsequent years, classes of plaintiffs obtained injunctive relief reducing excessive and unnecessary use of force in the Bellevue Prison Psychiatric Ward (*Reynolds v. Ward*, 81-CV-101 (S.D.N.Y. 1990)(order and consent judgment)); in the Brooklyn House of Detention (*Jackson v. Montemango*, 85-CV-2384 (E.D.N.Y.)(order approving stipulation for entry of judgment)); and in the Central Punitive Segregation Unit ("CPSU")(*Sheppard v. Phoenix*, 91-CV-4148 (S.D.N.Y. 1998)(order approving stipulation for entry of judgment)). In all of these cases, the Department narrowly limited relief to the particular facilities that were the subjects of the lawsuits and allowed unconstitutional practices to resume once those orders expired. Then, in *Ingles v. Toro*, 01-CV-8279 (S.D.N.Y. 2006), a class of inmates obtained a settlement that purported to offer system-wide relief, however, the Department failed to enforce the reforms agreed to in that matter and continued the same unconstitutional use of force practices.

4. More recently, in *Nunez v. City of New York*, 11-CV-5845(S.D.N.Y. 2011), another group of plaintiffs filed a class action lawsuit alleging that "the City's jails remain afflicted by the same culture of violence, the same failure of accountability, and the same deliberate indifference and active acceptance. Conditions in the jails have deteriorated markedly. Despite the training that its staff is supposed to receive, correction officers still mete out violence to

3

inflict pain rather than to maintain order." (*See* Second Amended Complaint, Dkt No. 34, p. 4, ¶ 5).

5. On August 4, 2014 the United States Attorney's Office for the Southern District of New York reported findings of an investigation conducted at Rikers Island pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997 and Section 14141 of the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141.[1] The investigation centered on whether the Department of Corrections ("DOC") adequately protects adolescents from excessive and unnecessary use of force by DOC corrections officers and supervisors. (*Id*. at 1). The findings were that "there is a pattern and practice of conduct at Rikers that violates the constitutional rights of adolescent inmates. In particular, we find that adolescent inmates at Rikers are not adequately protected from harm, including serious physical harm from the rampant use of unnecessary and excessive force by DOC staff." (*Id*. at 3). The investigation also noted that while the subject investigation did not specifically investigate the use of force against adult inmate population, the "investigation suggests that the systematic deficiencies identified in this report may exist in equal measure at the other jails on Rikers." (*Id*. at 3).

6. Plaintiff seeks (i) compensatory damages for physical injury, psychological and emotional distress, and other financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional laws; and (iii) such other and further relief, including costs and attorneys fees, as this court deems equitable and just.

---

[1] CRIPA Investigation of the New York City Department of Correction Jails on Rikers Island, available at http://www.justice.gov/usao/nys/pressreleases/August14/RikersReportPR/SDNY%20Rikers%20Report.pdf

4

## JURISDICTION

7. This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1988, and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

8. Jurisdiction is invoked herein pursuant to the aforementioned statutory and constitutional provisions and pursuant to 28 U.S.C. §§ 1331, 1343, this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

9. Plaintiff further invokes this Court's pendent jurisdiction over any and all state-law claims and causes of action which derive from the same nucleus of operative facts that give rise to the federally based claims and causes of action pursuant to 28 U.S.C. § 1367.

## VENUE

10. Venue is properly laid in this District under 28 U.S.C. §1391(b), this being the District in which the claim arose.

## TRIAL BY JURY

12. Plaintiff demands a trial by jury on each and every one of his claims as pled herein pursuant to Fed., R. Civ. P. 38(b).

## PARTIES

13. At times relevant hereto Plaintiff was an inmate at Rikers Island, New York. At the time of filing of this suit, Plaintiff is a resident of Bronx County in the State of New York.

14. At all times relevant hereto defendant NYC was and is a municipality of the State of New York and owns, operates, manages, directs, and controls the New York City DOC, (hereinafter, "NYC DOC"), which employs the other Defendants.

15. At all times relevant to this action, Defendant Corrections Officers John Does[2], are and were corrections officers employed by the NYC DOC, and acting under color of state law. They are being sued in both their individual and official capacities.

16. At all times relevant hereto and in all their actions described herein, Defendants Corrections Officers John Does were acting under color of statutes, ordinances, regulations, policies, customs, and usages of the NYC DOC and NYC, pursuant to their authority as employees, servants, and agents of the NYC DOC within the scope of employment and incidental to their otherwise lawful duties and functions as employees, servants, agents and corrections officers.

17. NYC was responsible for the hiring, training, supervision, discipline, retention and promotion of the corrections officers, sergeants and/or employees of the NYC DOC. They are being sued both in their individual and official capacities.

## FACTS

18. On December 8, 2014, Plaintiff Tommy Simmon (aka Tommy Simmons) was in the custody of the NYC DOC at the intake area of the AMKC C-95 at Rikers Island Correctional Facility in Queens, New York.

---

[2] As Plaintiff currently does not know the names of numerous NYC DOC Corrections Officers involved in the violations of his rights, the Defendant Corrections Officers will be referred to generally as Defendant Corrections Officers and the complaint will be amended once the names of the individual officers involved is discovered.

6

19. On the day of the incident, Tommy was told by Corrections Officers that he would be transferred from AMKC C-95 of Rikers Island to 15 Lower Dorm at Rikers Island.

20. Tommy alerted the Corrections Officers that an inmate that was then housed in 15 Lower Dorm had previously threatened Tommy's life and that Tommy felt he would be in danger if he was transferred there.

21. In reaction to Tommy's statements, the Correction Officer, believed to be at the rank of Captain, threatened Tommy, stating in sum and substance "even if I have to beat your ass and drag you to 15 Lower Dorm in handcuffs, you will be going to the housing area."

22. After Tommy proceeded to repeatedly say he would fear for his life if he was transferred, Corrections Officers grabbed Tommy's arm, punched him repeatedly about the head, arms, and pelvis, threw him to the ground, and repeatedly kicked and punched his head, back and legs.

23. The officers continued brutally kicking and punching Tommy for approximately tow minutes about his head, back, and legs.

24. As a result of the assault, Tommy felt substantial pain to his head, back, pelvis, and extremities.

25. Tommy was ultimately rendered unconscious.

26. The very Corrections Officers that assaulted Tommy called EMS, and having knowledge that Tommy had a prior history of seizure disorders, made patently false statements to EMS that Tommy was unconscious and/or injured as a result of a seizure.

27. Tommy awoke in Elmhurst Hospital Center.

28. He underwent extensive diagnostic testing and the medical assessment of Tommy's injuries revealed that he suffered from (1) transverse process fractures in his left L3 and L4

lumbar spine, (2) annulus bulges at L5/S1, (3) blunt force trauma to the left side of his pelvis, (4) numbness of his left leg, (5) urinary retention, and (6) extensive contusions to the face.

29.  The following day, December 9, 2014, Tommy was admitted to Bellevue Hospital for continued treatment and was not discharged until December 18, 2014.

30.  Tommy made a formal grievance of his injuries upon his return from the hospital on December 18, 2014.

31. As a result of the assault, Tommy required use of a wheelchair and/or cane to mobilize, a catheter to urinate, and due to the excruciating trauma caused to his pelvis, was unable to make any bowel movements for several weeks.

32. Tommy presently feels excruciating pain in his lower back and wears an extensive back brace, weighing over seven pounds, every day.

33. As a result of the harassment, threats, negligence, gross negligence and intentional infliction of emotional distress by Defendant Corrections Officers, Plaintiff feared for his safety and wellbeing, suffered anxiety and severe emotional distress.

## FIRST CLAIM FOR RELIEF:
## DEPRIVATION OF FEDERAL CIVIL RIGHTS
**(General Allegations, Fourth, Fifth, Eighth and Fourteenth Amendments)**

34.  Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

35.  All of the aforementioned acts of Defendants, their agents, servants, and employees were carried out under color of state law.

36. All of the aforementioned acts deprived plaintiff of the rights, privileges, and immunities guaranteed citizens of the United States by the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States including, but not limited to:

   a. the right to be free from unreasonable searches of his person,

   b. the right to be free from unreasonable seizure of his person, including excessive force,

   c. the right to be free from deprivation of liberty without due process of law, and

   d. the right to equal protection, privileges and immunities under the laws.

37. All of the aforementioned acts were carried out in violation of 42 U.S.C. § 1983.

38. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as corrections officers, with the entire actual and/or apparent authority attendant thereto.

39. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as corrections officers, pursuant to the customs, usages, practices, procedures, and rules of NYC and the NYC DOC, all under the supervision of ranking officers of said department.

40. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure, or rule of his/her respective municipality/authority, which is forbidden by the Constitution of the United States.

41. By these actions, these Defendants have deprived Plaintiff of rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, for which the Defendants are individually and jointly liable.

## SECOND CLAIM FOR RELIEF:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

42. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

43. Defendants engaged in extreme and outrageous conduct beyond all possible bounds of decency when they brutally assaulted Plaintiff.

44. Defendants' extreme and outrageous conduct was intended to inflict severe distress upon Plaintiff when they assaulted him.

45. Defendants outrageous conduct did inflict severe distress upon Plaintiff, which caused Plaintiff to suffer physical injuries, pain, anxiety and mental anguish.

## THIRD CLAIM FOR RELIEF:
## EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

46. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

47. The degree of force used by Defendants was excessive, unreasonable, and unwarranted.

48. Defendants' actions were intentional, willful, malicious, egregious, grossly reckless and negligent, unconscionable, and unprovoked.

49. As a result of the excessive force and brutality, Plaintiff sustained multiple injuries to his lumbar spine, pelvis, head and body and endured serious emotional and psychological distress.

50. All of the aforementioned acts of the Defendants constituted excessive force under the United States Constitution and the Defendants are liable for said damage.

## FOURTH CLAIM FOR RELIEF:
## FAILURE TO INTERVENE
## UNDER FOURTH AMENDMENT – 42 U.S.C. § 1983

51.  Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

52.  Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of DOC employing unjustified and excessive force against an inmate.

53. The defendant officers were present on December 8, 2014 at the C95 Unit of Rikers Island and in the vicinity of the incident and witnessed other officers use unlawful force against plaintiff, including brutally beating plaintiff about his head, back, and pelvis.

54. Defendants' violated plaintiff's constitutional rights by failing to intervene in the clearly unconstitutional use of force that resulted in injury and damages.

## FIFTH CLAIMS FOR RELIEF:
## MUNICIPAL LIABILITY

55.  Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

56.  The acts complained of herein were carried out by the Defendant Corrections Officers in their capacities as corrections officers, employees and officials pursuant to the customs, policies, usages, practices, procedures, and rules of NYC and the NYC DOC, all under the supervision of ranking officers of said departments.

57.  Prison administrators are constitutionally required "to take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *Hayes v.*

*NYC Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). When a jurisdiction takes a person into custody and holds him against his will, the Supreme Court has held that the Constitution "imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (quoting *DeShaney v. Winnebago County Dept. of Social Servs.,* 489 U.S. 189, 199-200 (1989)); *see also Randle v. Alexander*, 960 F. Supp. 2d 457, 471 (S.D.N.Y. 2013). Furthermore, The Eighth and Fourteenth Amendments forbid excessive physical force against inmates and pre-trial detainees. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also United States v. Walsh*, 194 F.3d 37, 48 (2d Cir. 1999).

58.  Nonetheless, prior to December 8, 2014, NYC and NYC DOC developed and maintained policies or customs acknowledged by Courts, the municipality, and the State as exhibiting deliberate indifference to the Constitutional rights of persons in NYC, which caused the violation of Plaintiff's rights.

59.  The NYC DOC operates under a single, system-wide written use of force police Directive 5006 (the "Written Policy").  The NYC DOC trains its staff at a single Training Academy subject to a uniform curriculum.  **It was the policy and/or custom of NYC and NYC DOC to inadequately and improperly train and supervise its corrections officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its corrections officers.**

60.  There is one centralized Integrity and Policy Division (formerly called the Investigation Division) that is responsible for uniformly investigating all reports of staff's use of force under uniform procedures.  There is a central Division that is responsible for conducting all of the administrative prosecutions.  This Division also has the authority to decline to prosecute

NYC DOC employees. **It was the policy and/or custom of NYC and NYC DOC to inadequately and improperly investigate complaints of misconduct against corrections officers filed by inmates in DOC custody, and acts of misconduct were instead tolerated by NYC, including, but not limited to the following incidents: assault and battery, harassment, negligence, intentional infliction of emotional distress and deliberate indifference to medical needs.**

61. NYC and NYC DOC are on notice as to the number, frequency, and severity of use of force incidents in city jails. The NYC DOC receives compilation reports documenting violent incidents, including reports of staff use of force. These "24-hour reports" contain summaries document the routine application of injurious force to inmates by staff members under circumstances which often suggest that the staff accounts are fabricated to cover up brutality and other misconduct. Furthermore, within the last 15 years senior supervisors and NYC DOC staff have been sued repeatedly by inmates alleging staff beatings and cover-up:[3]

- Reynolds v. City of New York, 11 Civ. 621 (S.D.N.Y.)(alleging beat-up in GMDC resulting in shoulder fracture and loss of consciousness; settled for $200,500);

- Mull v. City of New York,08 Civ, 8854 (S.D.N.Y.)(alleging beat-up in AMKC resulting in diffuse axonal injury to brain, partial loss of eyesight and partial loss of hearing and requiring the victim to take seizure medications; settled for $550,000);

- Belvell v. City of New York, 09 Civ. 8090(S.D.N.Y.)(alleging beat-ups at GMDC and RNDC resulting in facial fracture; settled for $350,000);

- Youngblood v. Baldwin, 08 Civ. 5982 (S.D.N.Y.)(alleging beat-up at GRVC resulting in skull laceration and broken nose; settled for $240,000);

---

[3] The compilation of cases is referenced in the class action complaint, *Nunez v. City of New York*, 11-CV-5845(S.D.N.Y. 2011). *See* Amended Complaint, Dkt No. 15, p. 28-30, ¶ 45.

- Williams v. City of New York, 07 Civ. 1105(S.D.N.Y.)(alleging beat-up in OBCC resulting in fractured jaw and facial bones and torn earlobe; settled for $202,500);

- Williams v. City of New York, 09 Civ. 5734(S.D.N.Y.)(alleging beat-up in RNDC resulting in laceration to head; settled for $87,500);

- Lee v. Perez, 09 Civ. 3134 (S.D.N.Y.)(alleging beat-up at NIC resulting in multiple rib fractures, a spinal fracture and a collapsed lung; settled for $300,000);

- Shuford v. City of New York, 09 Civ. 945 (S.D.N.Y.)(alleging two beat-ups at RNDC resulting in facial fractures; settled for $375,000);

- Diaz v. City of New York, 09 Civ. 945 (S.D.N.Y.)(alleging beat-ups involving two inmates, one at AMKC and one at OBCC; settled for $400,000 and $450,000, respectfully);

- Lugo v. City of New York, 08 Civ. 2931 (S.D.N.Y.) (alleging beat-up at NIC resulting in orbital fracture; settled for $185,000);

- Cuadrado v. City of New York, 07 Civ. 1447 (S.D.N.Y.) (alleging beat-up at GMDC resulting in orbital fracture; settled for $175,000);
- Pischeottola v. City of New York, 06 Civ. 2505 (S.D.N.Y.) (alleging beat-up at RNDC resulting in punctured lung requiring chest rube; settled $150,000);

- Rice v. N.Y.C.D.O.C., 03 Civ. 582 (S.D.N.Y.) (alleging beat-ups of two inmates at GRVC resulting in collapsed lung and contusion hematomas, in one case, and in neck and spinal cord injuries causing permanent stutter, in the other; settled for $255,000 and $590,000, respectfully);

- Joseph v. N.Y.C.D.O.C., 02 Civ. 9219 (S.D.N.Y.) (alleging beat-up at GRVC resulting in orbital fracture; settled for $375,000).

62. With actual and constructive knowledge of numerous forms of published literature, incident reports, and federal complaints detailing brutal incidences of excessive force, **it continues to be NYC and NYC DOC's custom, policy, usage, practice, procedure, and rule to turn a blind eye, and not in act response measures to curtail the frequency of constitutional violations.**

63. Despite the City and NYC DOC having notice of numerous instances of excessive use of force, the customs, policies, usages, practices, procedures, and rule of NYC and the NYC DOC ineffectively training corrections officers, failing to conduct unbiased and thorough investigations of use of force incidents, failing to discipline staff meaningful and promptly for misconduct to ensure general and specific deterrence, and flagrantly turning a blind eye to documented instances of injustice, constitutes deliberate indifference to the safety, well-being, and constitutional rights of Plaintiff.

64. The foregoing customs, policies, usages, practices, procedures, and rule of NYC and the NYC DOC were the proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

65. The foregoing customs, policies, usages, practices, procedures, and rule of NYC and the NYC DOC were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

66. As a result of the above described policies and customs, corrections officers of NYC DOC, including the defendant officers, believed that their actions would not be monitored by supervisory officers and that their own misconduct would not be investigated or sanctioned, but instead would be tolerated.

67. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff.

68. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate officers and were directly responsible for the violation of Plaintiff's constitutional rights.

69. Defendants NYC, as municipal policymakers in the training and supervision of Defendant corrections officers/employees, have pursued a policy and custom of deliberate indifference to the rights of persons in their domain who suffer violations of their freedom from deprivation of Liberty without Due process of law in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

70. All of the foregoing acts by Defendants deprived Plaintiff of federally protected rights, including, but not limited to, the right:

    a.    Not to be deprived of liberty without due process of law;

    b.    To be free from unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution;

    c.    To be protected against violations of his civil and constitutional rights;

    d.    Not to have cruel and unusual punishment imposed upon him; and

    e.    To receive equal protection under the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the Defendants:

1. Special and compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00) DOLLARS; and

2. Punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00) DOLLARS; and

3. Reasonable attorney's fees and costs; and

4. Such other and further relief as this Court deems just and proper.

DATED:   New York, New York
         June 2, 2015

                                        Respectfully submitted,

                                        _____/S/_____
                                        Kaitlin F. Nares, Esq. (KN2953)
                                        FISHER & BYRIALSEN PLLC
                                        *Attorney for Plaintiff*
                                        99 Park Avenue- PH/26TH FL
                                        New York, New York 10016
                                        (212) 962-0848 Ext 6